**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| County of Mohave, et al., | No. CV-22-08246-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| United States Bureau of Reclamation, et al., | |
| Defendants. | |

Before the Court is United States Bureau of Reclamation, the Commissioner of the Bureau of Reclamation, and the Regional Director, Interior Region 8: Lower Colorado Basin of the Bureau of Reclamation (collectively "Reclamation") Defendants' motion for reconsideration. (Doc. 89.)

**I.    BACKGROUND**

The Court explained the background facts in the Order denying the Application for Preliminary Injunction and the Order granting summary judgment ("SJ Order") in favor of Plaintiffs Mohave County, La Paz County, Yuma County, and the City of Yuma (collectively "Plaintiffs"). (Docs. 49, 78.) Rather than repeat them, the Court instead summarizes the relevant procedural background to resolve the motion for reconsideration now before it.

The Court granted summary judgment in favor of Plaintiffs on February 21, 2024. (Doc. 78.) The Court's SJ Order set aside the Finding of No Significant Impact ("FONSI") and remanded to Reclamation for preparation of an environmental impact statement

("EIS"). (*Id.*)

After granting summary judgment, the Court ordered the parties to file supplemental briefs addressing how to proceed with the water transfer contracts. (Doc. 78 at 30.) The Court stayed the SJ Order until further order of the Court. (*Id.*; Doc. 92.)

In its supplemental briefing, Reclamation argued in part that this Court should reconsider its ruling regarding the remedy—that it should instead allow Reclamation to determine whether to prepare a supplemental Environmental Assessment ("EA") or an EIS on remand. (Doc. 89 at 3.) Reclamation asked the Court to treat its arguments as a motion for reconsideration under Rule 54(b), Fed. R. Civ. P. (*See id.* at 3 n.1.) As a result, the Court deemed Reclamation's supplemental brief to be a motion for reconsideration and set forth a timeline for Plaintiffs to respond and for Reclamation to reply.[1] (Doc. 100.)

The motion is fully briefed. (Docs. 89, 101, 102.) The Court now addresses the merits of Reclamation's motion for reconsideration.

## II. LEGAL STANDARD

Local Rule of Civil Procedure 7.2(g) sets for the standard of review for motions for reconsideration.[2] *Id.* Motions for reconsideration are ordinarily denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." *Id.* The motion "shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order." *Id.* "Motions for reconsideration are disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*, 215 F.R.D. 581, 582 (D. Ariz.

---

[1] Under LR Civ 7.2(g)(2), motions for reconsideration must be filed no later than 14 days after the filing date of the Order. Because this Court set forth a different timeline in the briefing schedule, it waives this requirement and deems Reclamation's motion timely.

[2] Plaintiffs argue that Rule 59(e), Fed. R. Civ. P., and related Ninth Circuit precedent should apply. (Doc. 101 at 7-8.) Rule 59(e), however, does not apply here because this Court's SJ Order did not enter a judgment in this case. (*See* Doc. 78 at 30.)

2003) (citations omitted). A court may grant a motion for reconsideration where it has overlooked or misapprehended matters. *Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, 684 F. Supp. 3d 953, 955 (D. Ariz. 2023). Irrespective of the grounds, it is within the Court's discretion to grant reconsideration. *Bobbit v. Milberg LLP*, 338 F.R.D. 607, 616 (D. Ariz. 2021).

**III. ANALYSIS**

The Court considers (1) whether to remand to Reclamation for a supplemental EA instead of an EIS and (2) whether to vacate the FONSI and water transfer contracts.

**A.  Remand**

Reclamation takes issue with remedy in the SJ Order where the Court remanded the action back for an EIS. Reclamation argues in its motion for reconsideration that the parties never briefed the proper remedy for the Court's ruling. (Doc. 89 at 2.) In their summary judgment briefing, however, Plaintiffs argued remand for an EIS. (Doc. 63 at 30.) In fact, Reclamation did not engage Plaintiffs' proposed remedy. (*See* Docs. 65, 76, 90.) Reclamation also did not address a remedy if it did not prevail, nor did it preserve the right to separately brief this issue. (Doc. 89 at 3 n.1; Doc. 98 at 21-22.)

Now, even with the benefit of full briefing, the Court still finds that the proper remedy under Ninth Circuit case law is to remand this action back to Reclamation for the preparation of an EIS.

"An EIS must be prepared if there are 'substantial questions' regarding whether the agency's proposed action may have significant impacts," presenting a "'low standard' that is permissive for environmental challenges." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 878-79 (9th Cir. 2022), *cert. denied sub nom. Am. Petroleum Inst. v. Env't Def. Ctr.*, 143 S. Ct. 2582 (2023). At the time of the action here, the regulations in effect outlined "criteria for the agencies to consider when determining whether an action will significantly affect the environment and consequently requires a full EIS." *Id.* at 879 (citing 40 C.F.R. § 1508.27). "Meeting just one of these 'significance factors' may be sufficient for [the Court] to require an agency to prepare an EIS." *Id.*

Here, this Court found at least two significance factors that lead to "substantial questions" whether the agency action may have a significant effect, meaning the default rule is to remand to Reclamation for preparation of an EIS. (Doc.78 at 29-30.) *See, e.g.*, *Env't Def. Ctr.*, 36 F.4th at 878-79; *Anderson v. Evans*, 314 F.3d 1006, 1022 (2002) ("In sum, given the substantial uncertainty and controversy over the local impact of the Makah Tribe's whaling and its possible precedential effect, an EIS should have been prepared."); *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998) ("It is enough for the plaintiff to raise 'substantial questions whether a project may have a significant effect' on the environment."). Even Reclamation admits that Ninth Circuit holds that "if the court determines that the agency's proffered reasons for its FONSI are arbitrary and capricious and the evidence in a complete administrative record demonstrates that the project or regulation may have a significant impact, then it is appropriate to remand with instructions to prepare an EIS." (Doc. 89 at 8 (quoting *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1225 (9th Cir. 2008)).)

Reclamation splits hairs by claiming that the defects found by the Court "do not indicate that Reclamation's overall determination—that the Transfer *itself* would not have significant impacts on the environment—was arbitrary or capricious."[3] (Doc. 89 at 3.) Rather, Reclamation claims that the Court found "Reclamation inadequately addressed potential impacts arising from different, future actions." (*Id.* at 7.) Reclamation therefore argues that it meets the circumstances to allow the agency to decide whether to prepare an EA or EIS on remand. (Doc. 89 at 7-12.)

Reclamation cites *Center for Biological Diversity v. National Highway Travel Safety Administration* ("NHTSA"), 538 F.3d 1172 (9th Cir. 2008), for the authority that this Court should remand to the agency to decide whether to prepare a supplemental EA or an EIS. (Doc. 89 at 8.) In *Center for Biological Diversity*, the petitioners challenged NHTSA's 2006 Final Rule setting corporate average fuel economy standards for light

---

[3] This argument misstates the Court's SJ Order, where the Court found Reclamation's determination that it did not need to conduct an EIS arbitrary and capricious. (Doc. 78 at 29.)

- 4 -

trucks. 538 F.3d at 1181. The Ninth Circuit "remand[ed] to NHTSA for the preparation of a revised EA or, as necessary, a full EIS." *Id.* at 1227. The Ninth Circuit held this for two reasons, acknowledging first that "[w]hether to require an EIS is a very close question." *Id.* at 1226. First, the Court found "the EA's primary deficiency lies with its conclusory assertion that a modest 0.2 percent decrease in carbon emissions renders the 2006 Final Rule environmentally insignificant. The EA provides no reasons or analysis in support of this conclusion, much less 'convincing' reasons." *Id.* Second, Congress enacted another law during the appeal to which NHTSA had already started a separate EIS related to those standards and the information developed in that EIS would inform the decision for the necessity of an EIS related to the 2006 Final Rule. *Id.*

Here, *Center for Biological Diversity* is not dispositive. First, the petitioners there challenged an agency's final rule. 538 F.3d at 1181. Also, unlike *Center for Biological Diversity* where NHTSA made a conclusory statement without any analysis, Reclamation did conduct some analysis. *See id.* at 1226. When assessing precedential effects and cumulatively significant impacts under 40 C.F.R. § 1508.27(b)(6) and (b)(7), the Court found concrete information in administrative record to contradict Reclamation's analysis and conclusions. (Doc. 78 at 15-24.) With respect to precedential effects, Reclamation concluded that future water transfers were possible but too speculative to be considered. (*Id.* at 18.) In the record, "Reclamation had the purchase price of the Water Transfer and information that Greenstone may market an additional 6,000 acres of farmland for other transfers within the administrative record," making projections not so speculative (*Id.* at 19.) As for cumulatively significant impacts, Reclamation found that Queen Creek did its own projections and can meet future demands with existing water supplies and that it would be too speculative for Reclamation to project any additional growth post-build-out. (*Id.* at 21-22.) A memorandum in the administrative record, however, explained that Queen Creek may rely on the water transfer to support future growth. (*Id.* at 22-23.) Reclamation performed some analysis, but information in the administrative record contradicted these findings—leading to substantial questions. (*Id.* at 19-20, 22-24.)

1    Furthermore, though the relevant regulations here did change over the course of this
2    agency action, this is unlike the change in law found in *Center for Biological Diversity*.
3    *See* 58 F.3d at 1226. In *Center for Biological Diversity*, during that appeal, Congress
4    enacted a law that required NHSTA to issue new standards, which procedurally
5    necessitated a separate NEPA analysis and issue of a different final rule. *Id.* at 1226-27.
6    Reclamation argues that because 40 C.F.R. § 1508.27, a regulation central to the decision
7    in this case, was amended in both 2022 and 2024 that Reclamation "must consider the new
8    NEPA regulations and their import to ensure compliance with NEPA." (Doc. 102 at 10
9    (citing 89 Fed. Reg. 35442 (May 1, 2024) and 87 Fed. Reg. 23453 (Apr. 20, 2022).) In the
10   EA, however, Reclamation applied the regulations before these amendments. (*See* Doc. 78
11   at 12 n.3.) The regulations that matter are those used when the agency rendered its decision.
12   *See, e.g.*, *Env't Def. Ctr.*, 36 F.4th at 879 n.5; *350 Montana v. Haaland*, 50 F.4th 1254,
13   1269 n.23 (9th Cir. 2022); *California v. Norton*, 311 F.3d 1162, 1167 n.2 (9th Cir. 2002).
14   Reclamation finally argues that practical considerations, such as time and cost of an
15   EIS, should be considered by the Court when deciding to remand for an EIS. (*Id.* at 10-11.)
16   Reclamation, however, does not provide any caselaw to support that this should be a factor
17   for the Court's consideration. (*See* Docs. 89, 102.)
18   Therefore, the Court finds it proper to remand to Reclamation for an EIS.

**B.    Vacatur**

20   Reclamation argues the Court should not have vacated the FONSI in the SJ Order
21   and the Court should not vacate the water transfer contracts on remand. First, Reclamation
22   argues that by vacating the FONSI and the water transfer contracts, Reclamation will have
23   no valid contracts under which it could lawfully deliver water the Queen Creek or GSC
24   Farm. (Doc. 89 at 12.) Second, Reclamation argues that errors in the EA do not warrant
25   vacatur when balancing these against disruptive nature of the vacatur. (*Id.* at 12-15.)
26   Plaintiffs argue that vacatur is the presumptive remedy and that no compelling
27   circumstance exists to depart from that remedy. (Doc. 101 at 15-19.)
28   Under the APA, "the reviewing court *shall* hold unlawful and *set aside* agency

action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added). Despite the mandate of the APA, the Ninth Circuit has held "when equity demands, [an agency action] can be left in place while the agency follows necessary procedures." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995). The Ninth Circuit, however, rarely "deem[s] it advisable that the agency action remain in force until the action can be reconsidered or replaced." *Humane Soc'y v. Locke*, 626 F.3d 1041, 1053 n.7 (9th Cir. 2010). Courts therefore consider (1) the seriousness of the agency's errors and (2) the disruptive consequences that would result from vacatur. *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

Here, the disruptive nature of vacatur outweighs the errors in the EA. The Court concluded in the SJ Order that Plaintiffs raised substantial questions that the water transfer may have a significant effect on the environment. (Doc. 78 at 29.) During this case, however, the water contracts were executed, and Queen Creek received its first delivery of water in 2023. (Doc. 89-1 at 92.) Reclamation also approved Queen Creek's 2024 water order in December 2023. (*Id.*)

As discussed, the remedy for this procedural defect is to remand to Reclamation for the preparation of an EIS. Yet, as Reclamation noted, the time to complete an EIS can take years and it's possible that in the end—after it has fully analyzed the potential environmental impacts—the water transfer will still be approved. During this time, the residents of Queen Creek would be substantially impacted. According to Queen Creek's amicus brief, in the first year of the water transfer, the cost savings to Queen Creek's customers was at least $1.5 million, and the water transfer is expected to save customers over $13 million over the next five years.[4] (Doc. 88-1 at 8.) Furthermore, by vacating the

---

[4] Plaintiffs argue that Queen Creek improperly supplements the administrative record by providing the Court with declarations attached to its amicus brief. (Doc. 91 at 10-12.) The Court, however, only uses these declarations in its capacity as a court of equity to fully understand the "disruptive consequences" of vacatur, which require present-day information.

- 7 -

water contracts, Reclamation would have no valid fourth priority water contracts in place to transfer water to either Queen Creek or GSC Farms. (Doc. 89-1 at 92.) Reclamation cannot simply return the allocation back to GSC Farms, but instead it must be delivered it to other lower Colorado River contract holders. (*Id*.)

In light of this, the Court exercises its discretion and finds that reconsideration of the SJ Order is warranted as to the remedy of vacating the FONSI. Under *Arizona v. California*, 547 U.S. 150 (2006), "mainstream water shall be released or delivered to water users . . . only pursuant to valid contracts therefor made with such users by the Secretary of the Interior." *Id.* at 156. This means, vacatur of the FONSI could raise questions as to whether the water transfer contracts in this case are valid and authorize the delivery of water to Queen Creek. Reclamation never notified the Court during the summary judgment proceedings that the FONSI necessitated the validity of the water contracts. (*See* Docs. 65, 76, 90.) Had Reclamation done so, the Court likely would not have set aside the FONSI right away. Therefore, to allow the water transfer contracts to continue without issue, the FONSI may remain in effect until Reclamation issues an EIS addressing the water transfer.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part Reclamation's Motion for Reconsideration (Doc. 89).

**IT IS FURTHER ORDERED** that the Court's February 21, 2024 Order (Doc. 78) is vacated in part and amended only on the issue of setting aside the FONSI, instead the FONSI will be left in place pending the conclusion of an EIS. The Order (Doc. 78) is affirmed in all other respects.

**IT IS FURTHER ORDERED** that the following four water transfer contracts will remain in place pending the conclusion of an EIS:

1. The partial assignment and transfer of Arizona fourth priority Colorado River water entitlement between GSC Farm and Queen Creek;

2. A Colorado River water delivery contract between the United States and

Queen Creek;

3. An amendment to the existing Colorado River water delivery contract between GSC Farm and the United States to reduce GSC Farm's Arizona fourth priority Colorado River water entitlement; and

4. An 8.17 Wheeling Contract with Queen Creek to wheel the transferred fourth priority Arizona Colorado River water entitlement to Queen Creek through the Central Arizona Project system.

**IT IS FURTHER ORDERED** lifting the stay.

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiffs and close this case.

Dated this 13th day of August, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge